**UNITED STATES of America, Plaintiff,**

v.

**Danny Eugene O'DANIEL, Defendant.**

**No. 02–CR–159–H.**

United States District Court, N.D. Oklahoma.

Aug. 6, 2004.

---

37. *Id.*

38. *Id.* at 1205.

39. *Id.*

Julia O'Connell, Barry L. Derryberry, Federal Public Defender's Office, Tulsa, OK, for Danny Eugene O'Daniel (1), defendant.

Catherine J. Depew, Chad Adrian Greer, United States Attorney, Tulsa, OK, for U.S. Attorneys.

### ORDER

HOLMES, Chief Judge.

This matter comes before the Court for sentencing pursuant to a plea of guilty entered by Defendant Danny Eugene O'Daniel on March 5, 2004 in accordance with Fed.R.Crim.P. 11. Defendant now argues that to apply the Federal Sentencing Guidelines (the "Guidelines") promulgated under the Sentencing Reform Act of 1984 (the "Act") to the instant case would be unconstitutional under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *Blakely* held that a sentence enhancement imposed by a Washington state court pursuant to judicial factfinding under that state's statutory sentencing guideline scheme violated the defendant's Sixth Amendment rights to a jury and therefore was unconstitutional.

For the reasons set forth below, the Court finds as follows: (i) the Sixth Amendment rights articulated in *Blakely* apply to any sentence enhancement imposed under the Guidelines; (ii) going forward, the Guidelines can be applied to all cases in a manner that fully protects the Sixth Amendment rights articulated in *Blakely,* and therefore the Guidelines are constitutional; and (iii) the Guidelines can be applied to the instant case in a manner that fully protects Defendant's Sixth Amendment rights, and therefore sentencing Defendant under the Guidelines here is constitutional. Based on these findings, the Court hereby imposes the sentence described below.

### I

#### A. Nature of the Offense

The substantive facts of this care are relatively simple. On August 9, 2002, Defendant Danny Eugene O'Daniel entered an Internet chat room titled "# 0!!!!!!!!ltlgirlsexchat." In that chat room, Defendant, using the screen name "HarryD", made contact with Detective Mike Zaglifa of the Palos Heights, Illinois, Police Department who was posing as a twelve-year-old female using the screen name, "Steffies 12." Detective Zaglifa was assigned to the Illinois Attorney General's Internet Child Exploitation Task Force and involved in an undercover Internet investigation. During the Internet contact, Defendant sent to the detective fifteen graphic image computer files, certain of which contained child pornography. These files included one image of Defendant exposing his genitals and fourteen images of children engaging in various sex acts with adult males or other adolescents of the same gender.

Detective Zaglifa determined that the Internet address used by Defendant was registered to Green Country Internet in Grove, Oklahoma. He obtained a Cook County, Illinois, Grand Jury Subpoena and obtained Defendant's customer information from Green Country Internet. Subse-

quently, Detective Zaglifa requested the Oklahoma State Bureau of Investigation ("OSBI") to assist in conducting the investigation.

On August 22, 2002, a search warrant was executed at Defendant's residence located at 62000 East Loop, #5 in Grove, Oklahoma. Officers seized a Dell Dimension 4100 computer, a Dell Ultrascan P780 monitor, a Dell Quietkey keyboard, an Epsom Perfection 1250 Model G820A scanner, an Epsom Stylus C60 printer Model G320A, one Belkin 4 USB hub, one Intel USB Cam, one plastic Alpha diskette storage container holding sixteen floppy disks, eleven additional floppy diskettes, and thirty-one CD–ROM disks containing files of adult pornographic movies.

On August 27, 2002, Special Agent Cusic of the OSBI conducted a forensic examination of the computer seized from Defendant's residence. This examination revealed ten images, sequentially taken, of Defendant exposing his genitals. One of these images titled "mc071902" was identical to the image Defendant had sent to Detective Zaglifa on August 9, 2002. Agent Cusic found 232 images depicting adolescents or children in various acts of sex, poses, masturbation, and oral sex with adult males. Several of these images involved prepubescent minors and minors under the age of twelve. At least four of these images depicted sadism and violence, and which were entitled "ynghead[51626].jpg," "ynghead[51628].jpg," "!!!!!!!!!!!!pre10cum[51650].jpg," and "hello18[51656].jpg." The first two images depicted a young female under the age of five performing oral sex on an adult male while blindfolded. The latter two images each depicted very young females being vaginally penetrated by adult males. Additionally, Agent Cusic found 52 images of bestiality, most of which depicted females engaged in oral/vaginal/anal sex with mules, dogs, and monkeys. Agent Cusic also found the screen name "QUIE-TONE446@ MSN.com" with the description "a huggable old man that likes very young girls."

On January 9, 2004, Defendant was indicted on six separate counts under 18 U.S.C. § 2252(a): Knowing Transportation of a Visual Depiction Involving a Child Engaged in Sexually Explicit Conduct.

B. Procedural History

The procedural history of the case is considerably more complicated. Pursuant to a plea agreement with the United States (the "Plea Agreement"), Defendant requested to change his plea from not guilty to guilty under Fed.R.Crim.P. 11. In accordance with the practice of the Northern District of Oklahoma, the change of plea request was accompanied by a Petition to Enter Plea of Guilty (the "Petition"), along with a copy of the Plea Agreement.

Both the Plea Agreement and the Petition specify certain facts relevant to the nature of the offense and directly address the issue of Defendant's Sixth Amendment rights.[1]

The Plea Agreement recites the following facts:

> I, DANNY EUGENE O'DANIEL, admit that on or about August 9, 2002, I knowingly transported images of minors engaged in sexually explicit conduct by computer to an individual I thought to be a minor under the age of 16 years of age. Specifically, on or about August

---

1. The Sixth Amendment provides in applicable part as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...." U.S. Const. amend. VI. Thus, Defendant's right under this portion of the Sixth Amendment is to receive a jury trial.

9th, 2002, I DANNY EUGENE O'DAN-IEL, engaged in conversations via my computer in an Internet chat room with an individual I thought to be a 12 year-old female. I used my computer name, "HarryD," when communicating with this person I thought to be a 12–year–old female who used the computer name, "steffies12", to communicate with me. In fact, during our computer chat session, "steffies12" stated that she was twelve years old at the time. I then sent "steffies12" fifteen graphic image files that I knew to involve minors engaged in sexually explicit conduct with other minors and with adults. Some of the graphic image files that I sent to "steffies12" are of children under five (5) years of age. I also sent "steffies12" a graphic image file of myself in a t-shirt that says, "I got squished", said graphic image file depicting my unclothed genitals and said t-shirt recovered by officers during the execution of the search warrant at my residence in Grove, Oklahoma.

I do not contest that a later analysis of my hard drives revealed over 1,000 hits for "steffies12", the exact fifteen images I had sent "steffies12", including the photo of myself in my t-shirt, and other graphic image files including, but not limited to, a voluminous number of graphic image files of individuals engaged in sexually explicit conduct.

Further, I, DANNY EUGENE O'DAN-IEL, admit that on August 9, 2002, I knew that the graphic image files I sent via my computer to "steffies12" depicted actual and identifiable minors engaging in sexually explicit conduct, As well, at the time I sent these graphic image files to "steffies12", I thought that she was a twelve-year-old female and, I also knew that it was unlawful to send these graphic image files via my computer. Finally, at the time I sent these graphic image files to "steffies12", the computer that I used to send said graphic image files was located at my residence in Grove, Oklahoma, within the Northern District of Oklahoma.

(Plea Agreement at 6–7.)

With respect to sentencing and Defendant's right to jury under the Sixth Amendment, the Plea Agreement provides:

The defendant is aware that the sentence to be imposed shall be in conformity with the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551 through § 3742, and 28 U.S.C. § 991 through § 998, and that a sentence imposed under the Guidelines is without parole. The defendant is further aware that the sentence has not yet been determined by the Court, that any estimate of the likely sentence received from any source is a prediction, not a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum. The defendant further understands that all recommendations or requests by the United States pursuant to this agreement are not binding upon the Court (Sentencing Guidelines § 6B1.4(d)). The Court will impose a sentence within the appropriate guideline range, unless the Court finds there is a basis for departure because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. If the Sentencing Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw defendant's guilty plea, but will remain bound to fulfill all of defendant's obligations under this agreement.

(Plea Agreement at 10–11.)

Similarly, the Petition recites the following facts:

In August, 2002, in the Northern District of Oklahoma, I used a computer to send a ".jpg" image to a computer in the state of Illinois. The image showed a minor engaged in sexually explicit conduct. I knew what the "jpg" image depicted. I also knew what I was doing at the time, and that it was wrong.

(Pet. to Enter Plea of Guilty at 2.)

With respect to sentencing and his right to jury under the Sixth Amendment, the Petition provides:

I have been advised by counsel I will be sentenced pursuant to the sentencing guidelines procedure established by Title 18 U.S.C. sections 3553 *et seq.* I understand sentencing is a matter left exclusively in the province of the Court; and I understand the sentence imposed by the Court may be within the guideline range provided by law, or for good cause stated the Court may depart therefrom after a review of all relevant facts and circumstances of my case have been considered by the Court.

(Petition at 4.)

At the hearing on March 5, 2004, in accordance with Fed.R.Crim.P. 11, the Court reviewed with Defendant in detail the provisions of the Plea Agreement and the Petition to ensure that he knew, comprehended, and accepted their terms. In addition, the Court received clear and unequivocal representations from Defendant that he understood and agreed that acceptance of his plea by the Court would constitute an express waiver of his rights to a jury trial under the Sixth Amendment. Fed.R.Crim.P. 11(b)(1)(F). In accordance with the policy of the Northern District of Oklahoma, this waiver was memorialized in a written document styled "Waiver of Jury," executed by Defendant, which provided in its entirety as follows: "Comes now the undersigned defendant having been fully apprised of my rights, do hereby waive a jury and agree to try the above styled and numbered criminal proceedings to the Court as provided by Rule 23(a), Rules of Criminal Procedure." (Waiver of Jury at 1.)

At the first sentencing hearing on July 8, 2004, in light of the possible impact of the Supreme Court decision in *Blakely,* the Court indicated its intention to vacate the plea in this case, thereby returning the parties to the *status quo ante* to determine jointly the best course of action under the circumstances. However, Defendant objected to vacating the plea, asserting that the plea was "willing and knowing" and that he was now entitled to be sentenced without judicial factfinding under *Blakely.* The United States also objected to vacating the plea, arguing that such a return to the *status quo ante* under these circumstances was inconsistent with applicable law. *See, e.g., United States v. Hyde,* 520 U.S. 670, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997); *see also* Memorandum by Christopher A. Wray, Asst. Attorney General, "Guidance Regarding The Application Of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), To Pending Cases" at 13. Based upon a further review of the controlling authorities, and recognizing that both parties objected, by order dated July 13, 2004, the Court withdrew its intention to vacate the plea and set the matter for sentencing.

Thereafter, the Court conducted two brief evidentiary hearings. At the first hearing, notwithstanding Defendant's objection under *Blakely,* the Court expressed its intention to engage in judicial factfinding with respect to any possible enhancements to Defendant's sentence pursuant to Defendant's explicit waiver of jury and consent to judicial factfinding set forth in the Plea Agreement, the Petition, the Waiver of Jury, and the Rule 11 colloquy. The Court noted that if the plea was "willing and knowing", as asserted by Defen-

dant, and Defendant objected to vacating the plea, then the natural consequence of these actions was to proceed to sentencing pursuant to the unequivocal waiver of jury and consent to judicial factfinding expressed by Defendant at the time the guilty plea was accepted.[2]

At the same hearing, the Court declared that the rules of evidence would apply to the factfinding process and the standard of proof, for purposes of determining facts necessary to support any sentencing enhancements, would be beyond a reasonable doubt rather than by a preponderance of the evidence. The United States objected to both the change in the burden of proof and the application of the rules of evidence.

At the hearing, the United States presented evidence with respect to two prospective sentencing enhancements under the Guidelines: a five level enhancement for "distribution to a minor" under § 2G2.2(b)(2)(C) and a four level enhancement for possession of "material that portrays sadistic or masochistic conduct or other depiction of violence" under § 2G2.2(b)(3).[3] U.S. Sentencing Guidelines Manual § § 2G2.2(b)(2)(C) and 2G2.2(b)(3) (2002). The latter enhancement was not part of the crime charged in the Indictment, but was presented as "relevant conduct" under § 1B1.3(a)(1) of the Guidelines.[4]

As noted above, Defendant objected to both enhancements on the grounds that the facts necessary to support these enhancements can only be established through judicial factfinding. The Court denied this objection because the waiver of jury and consent to judicial factfinding at the change of plea hearing were clear and unequivocal, and Defendant had objected to vacating the plea, asserting that the change of plea was "willing and knowing." As further noted above, the United States

**2.** The Court observes that in this case, Defendant received greater protections at sentencing than existed at the time he entered his plea of guilty, and therefore is not prejudiced by this application of *Blakely*. Specifically, at his change of plea, Defendant waived his right to jury and consented to judicial factfinding under the preponderance of the evidence standard of proof. Pursuant to *Blakely*, Defendant now receives judicial factfinding under the higher standard of proof of beyond a reasonable doubt.

**3.** § 2G2.2 is entitled "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic" U.S. Sentencing Guidelines Manual § 2G2.2 (2002).

**4.** § 1B1.3(a) provides in applicable part:
   (a) Unless otherwise specified, (i) the base offense level where the guidelines specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
   (1) (A) all acts or omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
   (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.
   that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
   (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above were part of the same course of conduct or common scheme or plan as the offense of conviction.
   U.S. Sentencing Guidelines Manual 1B1.3(a)(1) and (2) (2002).

objected to the application of the beyond a reasonable doubt standard of proof and the rules of evidence at the hearing. The Court denied this objection based on *Blakely*'s language indicating that judicial factfinding, pursuant to waiver and consent, and jury factfinding are interchangeable. *See Blakely*, at 2430–40. The Court observes that there is simply nothing interchangeable about a fact established beyond a reasonable doubt under the rules of evidence and a fact established by a preponderance of the evidence using hearsay testimony.

As described more fully below, based on the evidence adduced at the evidentiary hearings, the Court finds that the United States has, beyond a reasonable doubt, established the facts necessary to support an enhancement under §§ 1B1.3(a)(1) and 2G2.2(b)(3), and failed to establish the facts necessary to support an enhancement under § 2G2.2(b)(2)(C). The Court will sentence Defendant accordingly.

## II

■ The threshold question is whether *Blakely* applies to the Federal Sentencing Guidelines. True enough, the Supreme Court stated in footnote 9 as follows: "The United States, as *amicus curiae*, urges us to affirm. It notes differences between Washington's sentencing regime and the Federal Sentencing Guidelines but questions whether those differences are constitutionally significant .... *The Federal Guidelines are not before us, and we express no opinion on them.*" *Blakely*, at 2538 (emphasis added).

Notwithstanding this disclaimer, the substance of the opinion clearly forecasts that Sixth Amendment rights are implicated by any sentencing system, including the Guidelines, wherein the judge, rather than the jury, establishes the facts that form the basis for a sentencing enhancement, absent proper waiver and consent. The Supreme Court stated:

> Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* *See Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (quoting *Apprendi, supra,* at 483, 120 S.Ct. 2348)); *Harris v. United States,* 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); *cf. Apprendi, supra,* at 488, 120 S.Ct. 2348 (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," Bishop, *supra,* § 87, at 55, and the judge exceeds his proper authority.

*Blakely,* at 2536–37 (emphasis in original).

The Court finds persuasive the analysis of this issue by the Seventh Circuit in *United States v. Booker.* The *Booker* court stated:

> But the issue in *Blakely* was not sentencing discretion—it was the authority of the sentencing judge to find the facts that determine how that discretion shall be implemented and to do so on the basis of only the civil burden of proof. The vices of the guidelines are thus that they *require* the sentencing judge to make findings of fact (and to do so under the wrong standard of proof), and

that the judge's findings largely determine the sentence, given the limits on upward and downward departures. The finding of facts (other than the fact of the defendant's criminal history) bearing on the length of the sentence is just what the Supreme Court in *Blakely* has determined to be the province of the jury.

*United States v. Booker*, 375 F.3d 508 (7th Cir.2004) (internal citations omitted) (emphasis in original).

The Court finds that in all legally significant respects, specifically the role of the judge as factfinder at sentencing for purposes of any sentencing enhancement, the system in the state of Washington is the same as the Federal Sentencing Guidelines. Therefore, the Court finds that *Blakely* applies to the Guidelines, and that any sentence enhancement under the Guidelines must be imposed in a manner that fully accommodates the Sixth Amendment rights articulated in *Blakely*.

### III

■ The next issue is whether the application of *Blakely* to the Guidelines renders the Guidelines constitutionally infirm. The Supreme Court stated in *Blakely* as follows: "By reversing the judgment below, we are not, as the State would have it, 'find[ing] determinate sentencing schemes unconstitutional.' (Brief for Respondent 34.) This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Blakely*, at 2438–39. Clearly, this indicates that courts should first, if possible, undertake to sustain the current system, as modified to accommodate *Blakely*, rather than to declare the Guidelines unconstitutional. Indeed, it is well settled that a court is responsible for upholding established law rather than extending its reach. *See, e.g.*, Ronald J. Krotoszynski Jr., *On the Danger of Wearing Two Hats: Mistretta and Morrison Revisited*, 38 Wm & Mary L.Rev. 417, 445. ("Put simplistically, judges are meant merely to interpret existing law; they do not create it out of whole cloth.")

The question becomes, therefore, whether the Guidelines can be applied so as to accommodate the Sixth Amendment rights articulated in *Blakely*, while maintaining the integrity of the federal sentencing system. As described more fully below, the Court finds that the Guidelines can be applied in a manner consistent with *Blakely* and therefore, if so applied, the Guidelines are constitutional.

On July 8, 2004, this Court announced a four-point plan (the "Plan") to be applied to all criminal cases going-forward to ensure the viability of the Guidelines while fully protecting the Sixth Amendment rights described in *Blakely*.[5] The Plan provides as follows:

---

5. It is noteworthy that the current confusion occasioned by *Blakely* arises exclusively in the context of "straddle" cases, that is, cases in which a trial was held, or guilty plea entered, prior to *Blakely,* and in which sentencing follows *Blakely*. *See, e.g. Booker*, 375 F.3d 508; *Fanfan v. United States*, No. 03–47–P–H, 2004 WL 1723114 (D.Me. June 28, 2004). Since the record upon which sentencing is based in those cases was developed prior to *Blakely*, there will necessarily be different sentencing outcomes depending on the facts of each case, and on what was established in the record. The focus here is going forward, wherein all facts are established in full compliance with *Blakely*, from charging documents, to the entry of a plea or holding of a trial, to sentencing. The Court believes that the "straddle" cases will soon pass through the system, and therefore should not form the basis for determining what is best for federal sentencing policy in the long term. The Court further believes that, in the long term, with all parties able to develop a more complete, appropriate, and useful record, it will be possible to implement *Blakely* while maintaining the constitutionality of the Guidelines.

1. The Court will only accept a plea of guilty accompanied by a .Sixth Amendment waiver of jury that expressly applies to both guilt or innocence and to sentencing. If a defendant does not desire to waive his or her jury rights in all respects, a jury trial on all relevant issues will ensue in accordance with the Sixth Amendment.

2. For those cases resolved by a plea pursuant to such a comprehensive waiver, judicial factfinding at sentencing will require that any contested enhancement or departure must be based on facts established beyond a reasonable doubt in accordance with the federal rules of evidence. The Court recognizes this may have significant consequences, particularly in areas such as relevant conduct, determining amounts (e.g. drug quantities and dollar amounts) and role in the offense. Nevertheless, the Court believes the language in *Blakely* equating judicial factfinding with jury factfinding as a matter of Sixth Amendment jurisprudence implicitly, if not explicitly, requires the application of such enhanced evidentiary standards.

3. For those cases that go to trial, facts necessary to support relevant sentencing enhancements and departures will be set forth on the verdict form for the jury to find beyond a reasonable doubt. A mechanism will be established whereby all parties have full notice of such potential enhancements prior to trial. The Court will give the jury such instructions as are necessary and appropriate to make these findings of fact.

4. The United States should include significantly more detail in its charging documents. For those cases that are resolved by entry of a plea, this will reduce the amount of judicial factfinding needed at sentencing. For those cases that go to trial, the jury will have a more complete understanding of the questions that will be presented on the verdict form as matters to be proved beyond a reasonable doubt. The Court anticipates that in some cases that go to trial involving certain sentencing enhancements, particularly relevant conduct, evidence regarding such enhancements may not be admissible because it may be of limited probative value in proving the crime charged and highly prejudicial. Only in special cases, for good cause shown, will the Court utilize a bifurcated procedure whereby guilt or innocence will be considered in a first phase and sentencing evidence will be offered in a second phase. Specifically with respect to relevant conduct, since the United States hereafter must prove all relevant conduct beyond a reasonable doubt in any event, wherever possible the United States should consider simply including any such relevant conduct allegations as part of the crime or crimes being charged.

The various elements of the Plan, operating together, are intended to maintain the workability and fairness of the Guideline system, while fully protecting each defendant's Sixth Amendment rights under *Blakely*. While mutually interdependent, each element will be subject to appeal and may, as a result, be modified. However, any such modification will not cause the system to fail. For example, the Plan will still function effectively if the Supreme Court ultimately determines that the burden of proof should remain preponderance of the evidence, rather than beyond a reasonable doubt, which is the standard applied here. Furthermore, ex-

perience in future cases may suggest that bifurcated proceedings, separating the guilt phase and the sentencing phase, can and should be utilized on a more frequent basis. The purpose here is to set forth a system that is constitutional under *Blakely*, while maintaining the integrity and viability of the Guidelines. The Court will address each element of the Plan in turn.

### A. Waiver of Jury

The Supreme Court announced new Sixth Amendment rights in *Blakely*. The Court, however, did nothing to disturb the current jurisprudence applicable to the waiver of those Sixth Amendment rights. To the contrary, *Blakely* states:

> Justice Breyer argues that *Apprendi* works to the detriment of criminal defendants who plead guilty by depriving them of the opportunity to argue sentencing factors to a judge. *Post*, at ---------- 4–5. But nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. *See Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348; *Duncan v. Louisiana*, 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial. We do not understand how *Apprendi* can possibly work to the detriment of those who are free, if

they think its costs outweigh its benefits, to render it inapplicable.

*Blakely*, at 2542.

Prior to *Blakely*, the cornerstone of the criminal justice system was waiver of jury, entry of a plea of guilty, and consent to sentencing under the Sentencing Reform Act of 1984, which includes at its heart judicial factfinding. Indeed, 97.1% of all criminal cases in 2002 were resolved without a jury trial at the request of the defendant pursuant to a waiver of his or her Sixth Amendment rights.[6] There is simply nothing in *Blakely* to suggest that this should change in a post-*Blakely* environment. Rather, except to the extent that it affects the applicable rules of evidence and burden of proof, *Blakely* predominantly impacts only those cases in which the defendant does not waive his Sixth Amendment rights, and instead proceeds to a trial by jury as guaranteed by the Constitution. In those cases, which constitute a fraction of the total number of criminal cases in the federal system, it is eminently possible to protect the defendant's *Blakely* rights under the Sixth Amendment.

A defendant is entitled to a trial by jury as a constitutional right. There is, however, simply no constitutional right to waive a jury trial. Waiver is a privilege granted by Fed.R.Crim.P. 23, and is expressly conditioned on the consent of the government and approval of the Court. Fed.R.Crim.P. 23(a)(2) and (3); *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). Further, there is no authority that grants a defendant a constitutional right to selectively waive his or her Sixth Amendment right to some issues (e.g. guilt or innocence) and not others (e.g. sentencing). Nor is a defendant constitutionally entitled to enter a plea of guilty by waiving his right to a jury, and yet resurrect his

---

**6.** United States Sentencing Commission, "2002 Sourcebook of Federal Sentencing Sta- tistics."

right to a jury at sentencing by interposing a constitutional challenge to the Guidelines. A waiver of the Sixth Amendment right to jury is just that, a waiver of jury. A court cannot, and must not, act so as to exert pressure on a defendant to waive his right to a jury. But a court certainly can require that a defendant accept the full and natural consequences of such a waiver, including judicial factfinding at sentencing. If a defendant determines not to accept such consequences, as is his right, the matter should be scheduled for trial in order to fully vindicate the defendant's Sixth Amendment rights.

This Court believes that the constitutional viability of the Guidelines depends on the continued viability of the current system of waiver and consent. The jurisprudence supporting this system was not challenged in any way by *Blakely*. Accordingly, waiver and consent should remain the cornerstone of the criminal justice system in the future.

### B. Burden of Proof and Rules of Evidence

The Guidelines provide that the burden of proof for establishing a sentencing factor is a preponderance of the evidence.

U.S. Sentencing Guidelines Manual § 6A1.3 cmt. (2002).[7] The commentary to § 6A1.3 states, "The Commission believes that the use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts in the case." *Id.*

The Guidelines further provide that the rules of evidence do not apply to the determination of whether facts support a sentencing enhancement:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

U.S. Sentencing Guidelines Manual § 6A1.3(a) (2002).[8]

---

**7.** This parallels Fed.R.Evid. 1101(d)(3), which directs that the rules of evidence do not apply to sentencing.

**8.** The Commentary to § 6A1.3 further provides:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. *See* 18 U.S.C. § 3661; *see also United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 635, 136 L.Ed.2d 554 (1997) (holding that lower evidentiary standard at sentencing permits sentencing court's consideration of acquitted conduct); *Witte v. United States*, 515 U.S. 389, 399–401, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (noting that sentencing courts have traditionally considered wide range of information without the procedural protections of a criminal trial, including information concerning criminal conduct

that may be the subject of a subsequent prosecution); *Nichols v. United States*, 511 U.S. 738, 747–48, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (noting that district courts have traditionally considered defendant's prior criminal conduct even when the conduct did not result in a conviction). Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. *Watts*, 117 S.Ct. at 637; *Nichols*, 511 U.S. at 748, 114 S.Ct. 1921; *United States v. Zuleta–Alvarez*, 922 F.2d 33 (1st Cir.1990) *cert. denied*, 500 U.S. 927, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991); *United States v. Beaulieu*, 893 F.2d 1177 (10th Cir.), 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). Reliable hearsay evidence may be considered. *United States v. Petty*, 982 F.2d 1365 (9th Cir. 1993), *cert. denied*, 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994); *United States*

The United States asserts that these principles are not disturbed by *Blakely.* The United States argues in the alternative that if *Blakely* applied in such a way as to change the burden of proof or the applicability of the rules of evidence, this would alter an integral element of the guideline system and, as a result, the entire guideline system would fall. *See* Memorandum by James Comey, Deputy Attorney General, "Department Legal Positions and Policies in Light of *Blakely v. Washington* " (2004). For the reasons discussed below, the Court disagrees.

■ As noted previously, *Blakely* provides that pursuant to proper waiver and consent a court may engage in judicial factfinding. *Blakely,* at 2542. This does not suggest, however, that a defendant's Sixth Amendment rights are protected by judicial factfinding under a relaxed burden of proof and without application of the rules of evidence. To the contrary, the Supreme Court equates judicial factfinding with jury factfinding and states that the one may be substituted for the other pursuant to proper consent and waiver. *See Id.* at 2542. Moreover, the Supreme Court reminds us that *Apprendi* involved the same concern for such a higher standard of proof, stating, "This case requires us to apply the rule we expressed in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); 'Other than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id.* at 2536.

Logic and common sense dictate that a judge may not constitutionally substitute judicial factfinding for jury factfinding under *Blakely* without a more exacting standard of proof and the application of the rules of evidence. Moreover, there is little remarkable about these adjustments in the context of a criminal case. Under Fed. R.Crim.P. 23, a defendant may waive his or her right to a jury and try the case to the court. There can be no argument that in so doing the defendant would then be subject to a lower burden of proof, or that the rules of evidence should no longer apply. Similarly, under *Blakely,* the Sixth Amendment is the guiding legal principle applicable to factfinding at sentencing, whether by the jury or by the judge, and the Sixth Amendment protections of a higher burden of proof and the application of the rules of evidence should apply no matter which factfinder is selected. Simply stated, there can be no dilution of one's rights under the Sixth Amendment when one factfinder is selected over the other.

The United States argues that any change in the burden of proof would disrupt the guideline system so significantly that the Guidelines would fail as a result. This argument is a companion argument to the claim that, as a matter of severability

---

*v. Sciarrino,* 884 F.2d 95 (3d Cir.), *cert. denied,* 493 U.S. 997, 110 S.Ct. 553, 107 L.Ed.2d 549 (1989). Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means. *United States v. Rogers,* 1 F.3d 341 (5th Cir.1993) *United States v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978) *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). Unreliable allegations shall not be considered. *United States v. Ortiz,* 993 F.2d 204 (10th Cir.1993).

U.S. Sentencing Guidelines Manual § 6A1.3 cmt. (2002).

This Guideline provision is derived from the federal statute that states:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661 (2000).

analysis, certain changes in the current system render the Guidelines inapplicable as a whole. The Court disagrees. The burden of proof is not a significant aspect of the overall interdependency of the various component parts of the Guidelines. As stated above, the cornerstone of the criminal justice system under the Guidelines is the defendant's waiver of jury, entry of a plea of guilty, and consent to sentencing by the judge under the Sentencing Reform Act of 1984. While adjusting the burden of proof and applying the rules of evidence to cases where a defendant enters a plea and consents to judicial factfinding may require the United States to include more detail in its charging documents or gather more evidence for sentencing, such changes should not precipitate a failure of the system. More importantly, there is simply nothing in the Guidelines, the Act and its legislative history, or the case law to support the Government's claim.

Finally, as a practical matter, every district court judge is aware that in the vast majority of cases, the facts necessary to support sentencing enhancements can be established without regard to the burden of proof. For example, whether the defendant was carrying a gun. In some cases, however, particularly those involving amounts, a defendant's role in the offense, and relevant conduct, the burden of proof will have a significant effect. The Court would only observe that these areas were vexing for purposes of proof prior to *Blakely*, and district court judges developed ways of fairly dealing with these problems.

The Court concludes that a clear purpose of *Blakely* is to ensure that each fact necessary to support a sentencing enhancement must be proved under the rules of evidence beyond a reasonable doubt to a jury or, pursuant to proper waiver and consent, to a judge. This will have its greatest impact in the area of relevant conduct. In this regard, the Court simply comments that, at least to some extent, relevant conduct has long caused discomfort to those involved in the criminal justice system, and *Blakely* directly speaks to that discomfort.

### C. Trial by Jury

█ In *Blakely*, the Supreme Court held that any fact necessary to support a sentencing enhancement must be determined by a jury. As discussed in Section A above, *Blakely* permits a district court judge to conduct the necessary factfinding pursuant to a proper waiver and consent. As discussed in Section B above, this grant of authority to the judge must be accompanied by a change in the burden of proof and the application of the rules of evidence to fully equate jury factfinding with judicial factfinding. These steps will effectively resolve over 97% of the cases in the federal criminal justice system.

The remaining cases will present particular problems that require additional time, energy, and effort on the part of all responsible parties in the criminal justice system. But the changes required in the system are not difficult, and district court judges are well experienced in implementing the kind of safeguards that are necessary to protect a defendant's Sixth Amendment rights.

To ensure that *Blakely* is followed, the trial court must put before the jury each fact that must to be established to support a sentencing enhancement.[9] Notably, the

---

**9.** The Court notes that nothing in this opinion is inconsistent with the holdings in *Fanfan*, No. 03–47–P–H, 2004 WL 1723114 (D.Me. June 28, 2004), or in *Booker*, 375 F.3d 508. In both of those cases, the defendant had been tried by a jury. The respective courts held that in that situation, only facts that had been submitted to and found by the jury could be considered at sentencing. No additional facts were determined by the jury that could support any sentencing enhancements, and

trial court is not required to put before the jury each specific sentencing enhancement, but only the *facts* necessary to support any such enhancement. Accordingly, for certain complex enhancements, it may be possible to establish the requisite factual basis without requiring the jury to sift through all the applicable definitions described in the Guidelines.

This Court believes that, in most cases, requiring the jury to find each fact necessary to support a sentencing enhancement beyond a reasonable doubt is neither novel nor onerous. Pursuant to *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, courts already require juries to determine beyond a reasonable doubt certain issues, such as amounts, that dictate the nature of a statutory offense. *See, e.g.* 21 U.S.C. § 841(b) (1994); *See also Fanfan v. U.S.*, No. 03–47–P–H, 2004 WL 1723114 (D. Me. June 28, 2004). Further, in civil cases, district court judges routinely put before juries numerous interrogatories on the verdict form. While posing several questions to the jury in a criminal setting will be more delicate, the civil case experience informs district court judges on the best manner in which to implement this process, and puts district judges on ground that is both solid and familiar.[10]

Of course, in certain cases the issues will compel a procedure that is complicated and time consuming. But because issues in isolated cases are complicated and time consuming does not mean that they cannot be managed in a way that is both effective and fair. There is nothing in this Court's experience with juries that would suggest that a jury cannot make very sophisticated

.sentencing decisions with proper guidance and instruction by the Court.

### D. Unique Cases

In limited instances, jury factfinding will require specialized procedures. The proper administration of these cases will reside with the district court judges who have vast experience in tailoring the process to ensure fair and efficient outcomes.

The Court anticipates that, in particular, special problems will arise in future cases involving relevant conduct. Instances will occur where evidence of relevant conduct will not be probative of the crime charged and will be highly prejudicial. In such cases, the evidence cannot be admitted during the guilt phase of the trial, thus forcing a second phase for presentation of sentencing evidence to the jury. These cases should be rare. Indeed, since the Government must now establish all facts necessary to support a sentencing enhancement beyond a reasonable doubt, wherever possible the Government should simply charge the relevant conduct under applicable law in the indictment, rather than seek to raise it solely at sentencing.

With respect to those cases in which a bifurcated proceeding is required, the Court notes that district court judge's are quite familiar with this process. For example, punitive damage cases routinely require such a procedure. District court judges clearly can adjust without difficulty to the needs presented by such cases.

The Court finds that the Guidelines are constitutional if implemented in accordance with this four-point Plan. The Plan will maintain the workablity of the Guidelines, while addressing the concerns expressed in *Blakely* that judicial factfinding by a lower

---

therefore no enhancements were imposed. Moreover, because the defendants elected to exercise their Sixth Amendment right to a trial by jury, no waiver and consent issues were raised.

10. As in any complicated case, whether civil or criminal, judges can put in place requirements for filing proposed verdict forms and instructions well in advance of trial to ensure the fair and expeditious treatment of these issues.

standard of proof can be inconsistent with a defendant's rights under the Sixth Amendment. As noted in *Blakely*, the Supreme Court's goal was not to eradicate sentencing guideline systems, but to ensure that they are implemented in a manner consistent with each defendant's Sixth Amendment rights. *Blakely*, at 2539–40. The Court believes that the Plan achieves this goal.

## IV

In the instant case, Defendant entered a plea of guilty to the Knowing Transportation of a Visual Depiction Involving a Child Engaged in Sexually Explicit Conduct. As described in detail above, in so doing Defendant waived his right to a jury and expressly consented to judicial factfinding for purposes of sentencing under the Sentencing Reform Act of 1984.

■■■ Applying the Federal Sentencing Guidelines, without enhancements, the Court determines the base offense level to be 17. Additionally, Defendant's Plea Agreement contained statements which support a two-point enhancement under § 2G2.2(b)(1) because the material involved a prepubescent minor or a minor under the age of twelve years. A second two-point enhancement for the use of a computer in the transmission of the material is also appropriate under § 2G2.2(b)(5) based on statements in the Plea Agreement. This brings the offense level to 21, without objection.

■■■ Two further enhancements, each requiring judicial factfinding, have been recommended by the Presentence Investigation Report. These two enhancements, amounting to a recommended increase by nine additional levels, are objected to by Defendant. Thus, under *Blakely*, the United States must prove beyond a reasonable doubt the facts necessary to support each enhancement.

The first issue is whether Defendant distributed the pornographic images to a minor.[11] The parties have stipulated that the facts necessary to determine this issue are in the record. As noted above, Defendant distributed the image to an undercover *adult* law enforcement officer, believing him to be a minor. Accordingly, the Court finds that the United States has failed to prove beyond a reasonable doubt that Defendant distributed a pornographic image to a minor and therefore the established evidence supports only a two-point enhancement for "distribution," under § 2G2.2(b)(2)(E), and not a five point enhancement for "distribution to a minor" under § 2G2.2(b)(2)(C), bringing the offense level to 23.[12]

---

11. The Guidelines define minor as "an individual who had not attained the age of 18 years" and distribution to a minor as "the knowing distribution to an individual who is a minor at the time of the offense, knowing or believing the individual is a minor at that time." U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n. 1 (2002).

12. § 2G2.2(b) provides in pertinent part:

(2) (Apply the Greatest) If the offense involved:

(A) Distribution for pecuniary gain, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the retail value of the material, but by not less than 5 levels.

(B) Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by 5 levels.

(C) Distribution to a minor, increase by 5 levels.

(D) Distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, increase by 7 levels.

(E) Distribution other than distribution described in subdivisions (A) through (D), increase by 2 levels.

U.S. Sentencing Guidelines Manual § 2G2.2(b)(2)(A)-(E) (2002).

■ The second issue involves a possible enhancement for relevant conduct, specifically, whether Defendant's possession of four images depicting violence to a minor should be considered relevant conduct with respect to the offense charged—distribution. U.S. Sentencing Guidelines Manual § 2G2.2(b)(3). The parties have stipulated that the images from Defendant's hard-drive depicted violence to a minor as defined by the Guidelines.

At the hearing on July 19, 2004, the United States argued that the relevant conduct enhancement should be considered under § 1B1.3(a)(1) of the Guidelines, stating that the issue was whether the possession "occurred during the commission of the offense of conviction." The United States' witness testified that he was unable to establish this fact without additional testing and the Court continued the hearing to permit the development of this evidence.

At the hearing held on August 6, 2004, the United States introduced evidence, including testimony from Special Agent Patrick Kennedy, that established the following with respect to each of the four images:

1. The image identified by number 51626 was created on Defendant's computer on August 3, 2002 at 7:50:04 p.m. and was modified on August 3, 2002 at 7:50:32 p.m.;

2. The image identified by number 51628 was created on August 3, 2002 at 7:50:06 p.m. and was modified on August 3, 2002 at 7:50:36 p.m.;

3. The image identified by number 51650 was created on August 10, 2002 at 4:02:22 p.m. and was modified on August 10, 2002 at 4:04:04 p.m.;

4. The image identified by number 51656 was created on August 10, 2002 at 4:10:16 p.m. and was modified on August 10, 2002 at 4:13:44 p.m.

The record previously established that the proscribed images that formed the basis of the crime of conviction were transmitted on August 9, 2002. Further, the search warrant that discovered these four additional images was executed on August 22, 2002.

The Court finds that, based on the testimony of Special Agent Kennedy, which made clear that the images were consciously saved to Defendant's hard drive, and other evidence adduced at the hearing, the United States has proved beyond a reasonable doubt that Defendant possessed at least two of the proscribed images "during the commission of the offense of conviction." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1) (2002). Therefore, the four-point enhancement under § 2G2.2(b)(3) should apply.

Based on these findings, the adjusted offense level in this case is 27, and after a three-point adjustment for acceptance of responsibility, the total offense level is 24. Defendant has a criminal history category of I, and therefore the range under the Guidelines is 51 to 63 months. Based on the record, the Court hereby sentences Defendant to 63 months, which is at the high end of the applicable guideline range, due to the fact that Defendant clearly intended to distribute pornographic images to a minor, notwithstanding his failure actually to do so, the number of images at issue, and Defendant's attempt to avoid arrest early on in this case.

## V

In conclusion, the Court finds that *Blakely* applies to the Guidelines and the Court has a judicial responsibility to uphold the Guidelines, if possible, while protecting the Sixth Amendment rights articulated in *Blakely*. The Court further finds

that, if applied in accordance with the above-described four-point Plan, the Guidelines are constitutional.

Applying the terms of the Plan to the instant case, the Court finds that the United States has proved beyond a reasonable doubt the facts necessary to support the proposed relevant conduct enhancement under §§ 1B1.3(a)(1) and 2G2.2(b)(3). Defendant is hereby sentenced under the Act, using a guideline range from 51 to 63 months, to 63 months.

IT IS SO ORDERED.