UNITED STATES of America,

v.

**Brett JOHNS.**

**Criminal No. 1:03–CR–0250–16.**

United States District Court, M.D. Pennsylvania.

Sept. 15, 2004.

William A. Behe, Harrisburg, PA, for Plaintiff.

## MEMORANDUM

CONNER, District Judge.

Sentencing issues that were routine a mere three months ago now merit a full opinion. Defendant in this case pled guilty to a federal offense, use of a communication facility in drug trafficking, on March 25, 2004. Thereafter, the United States Probation Office prepared a pre-sentence report. Defense counsel lodged several objections to the report in early June 2004. On June 24, 2004, the Supreme Court issued its opinion in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), holding that all facts relevant to the "statutory maximum" sentence must be submitted to a jury and proved beyond a reasonable doubt. Understandably, defense counsel levied additional objections to the report based on the *Blakely* decision.

A sentencing hearing was held on August 31, 2004. The court overruled defendant's *Blakely* objections and imposed a sentence in accordance with the United States Sentencing Guidelines. This opinion is in support of those rulings.

Resolution of the objections to the pre-sentence report requires an examination of the meaning of *Blakely* and its effect on the Guidelines. Several district courts within the Third Circuit have addressed the issue, reaching different conclusions,[1]

---

**1.** *See United States v. Jarrett*, No. Civ. A. 04–0699, 334 F.Supp.2d 810, 814–822, 2004 WL 1961600, at \*4–11 (W.D.Pa. Sept.1, 2004)

but neither the Court of Appeals nor the Supreme Court has offered definitive precedential guidance.[2] Nevertheless, the court believes that *Blakely* and its predecessors compel one holding: The constitutional rights recognized in *Blakely* are both applicable to and consistent with the United States Sentencing Guidelines.

## I. *Procedural Background*

Only a discussion of defendant's indictment and plea is necessary to frame the issues *sub judice*. The original indictment was filed in September 2003, charging defendant with conspiracy to distribute cocaine base (crack cocaine) in the area of Lewistown, Pennsylvania. More than eighteen others were named as co-conspirators. (Doc. 1). Defendant entered a plea of not guilty. (Doc. 70).

Following negotiations with prosecutors, defendant agreed to plead guilty to a single offense, use of a communication facility in drug trafficking, in exchange for dismissal of the other charges. (Doc. 826 at 5). This offense carried a maximum sentence of four years imprisonment. *See* 21 U.S.C. § 843(d)(1). Both parties understood that the maximum sentence would apply based on the amount of drugs— more than twenty grams of cocaine base— involved in the offense. (Doc. 826 at 4–5).

By entering into the agreement, defendant avoided a potential fifteen-year sentence of imprisonment to which he was exposed if convicted on all charges. *See* 21 U.S.C. §§ 841(a)(1), 846.

The parties executed the plea agreement in February 2004. (Doc. 414). Several provisions expressly affirm that the United States Sentencing Guidelines will apply at sentencing and that the judge will have the authority to resolve disputed issues relating to sentencing:

> The defendant, as well as counsel for both parties, understand that the United States Sentencing Commission Guidelines ... will apply to the offenses to which the defendant is pleading guilty....
>
> . . . .
>
> 16. The defendant understands that unresolved substantive objections [to material information provided in the pre-sentence report] will be decided by the Court at the sentencing hearing....
>
> . . . .
>
> 18. At the sentencing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct in-

(finding that *Blakely* applied but did not preclude imposition of Guidelines sentence); *United States v. Fotiades–Alexander*, 331 F.Supp.2d 350, 351–54 (E.D.Pa.2004) (same); *United States v. Burton*, No.Crim. 99–109–01, 2004 WL 1813105, at *6–8 (E.D.Pa. July 21, 2004) (same); *United States v. Harris*, 325 F.Supp.2d 562, 563–65 (W.D.Pa.2004) (finding that *Blakely* applied and rendered Guidelines unconstitutional as a whole); *United States v. Leach*, 325 F.Supp.2d 557, 558–62 (E.D.Pa.2004) (finding that *Blakely* applied and rendered Guidelines unconstitutional as applied).

**2.** The Third Circuit has squarely addressed *Blakely* only in one non-precedential opinion, *United States v. Coplin*, 106 Fed.Appx. 143 (3d Cir.2004), in which it assumed *arguendo* that *Blakely* applied to federal sentencing proceedings but held that the decision did not preclude application of Guidelines enhancements based on prior convictions. *See id.* at 143. In accordance with preferred practice, this court will not rely on the opinion in *Coplin* to resolve the issues presented in this case. *See* 3D CIR. LAR app. I, IOC 5.7 ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."); *cf. infra* note 8 (discussing effect of *Blakely* on Third Circuit precedent); *infra* Part II.A.1 (stating that prior convictions may be considered without submission to jury or proof beyond a reasonable doubt).

cluding the conduct that is the subject of the charges which the United States has agreed to dismiss, and the nature and extent of the defendant's cooperation, if any.

(Doc. 414 at 1, 7–8). The agreement fails to specify drug quantity, presumably because both parties understood that the offense involved distribution of more than twenty grams of cocaine base, sufficient to invoke the statutory maximum. (Doc. 826 at 4–5).

A change of plea hearing was held in March 2004. (Doc. 537). As required by the agreement, defendant pled guilty to one count of use of communication facility in drug trafficking. During the hearing, counsel for the government indicated that defendant was involved in the distribution of a substantial quantity of cocaine base and that the plea agreement "capp[ed]" his maximum sentence of incarceration at forty-eight months. Defense counsel and defendant confirmed the summarization and stated that the agreement had been entered knowingly and voluntarily.

The court advised defendant of the nature of his right to a jury trial and proof beyond a reasonable doubt:

> You [are] entitled to a jury trial in these matters in which you through counsel would select a jury consisting of twelve persons. At the trial the government would have the responsibility of proving each and every element of the crime charged against you beyond a reasonable doubt. And you are presumed innocent until that burden is met.... Any finding of guilt by a jury would have to be unanimous. That is all twelve jurors would have to agree.

The court asked whether defendant understood his right to a jury trial. Defendant responded affirmatively. The court then asked, "Is it your desire to give up your right to a jury trial and to enter a plea of guilty to the information?" Defendant responded, "Yes." The court accepted defendant's guilty plea as knowing and voluntary. (Docs. 537, 544).

A pre-sentence report was prepared by the United States Probation Office. The report recounted defendant's several prior convictions, the factual predicates of the offense to which defendant had pled guilty, and defendant's involvement in the larger drug distribution scheme. It also described a search of defendant's residence, during which an unloaded firearm and several grams of cocaine base were discovered. It asserted that the offense to which defendant had pled guilty involved "at least" twenty grams of cocaine base. Based on this information, the report proposed a sentence range commensurate with use of a communication facility in drug trafficking involving more than twenty grams of cocaine base. It also suggested application of a sentencing enhancement based on weapons possession.

Defense counsel's initial objections to the report did not challenge the quantity of drugs involved in the offense; indeed, counsel characterized as "reasonable" the estimate that more than twenty grams could be attributed to defendant. (Doc. 826 at 12–13, 15). Instead, the objections addressed the issues of weapons possession and criminal history.[3] Defense coun-

---

**3.** Counsel also claimed that the pre-sentence report improperly refused to grant a reduction for acceptance of responsibility. The court declined to rule on this objection (Doc. 826 at 31), finding that it would have no potential effect on the final sentence imposed. *See* FED.R.CRIM.P. 32(i)(3) ("At sentencing, the court ... must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing ....").

sel asserted that the gun discovered during the search of the residence did not belong to defendant and that, for this reason, the enhancement for weapons possession should not apply. Counsel also claimed that the criminal history presented in the report included a conviction that defendant did not believe was "accurate." (Doc. 826 at 10–11). On June 8, 2004, the probation officer submitted to the court a copy of the report and an addendum recounting the objections and indicating that the officer "stood by the pre-sentence report."

A sentencing hearing was scheduled for August 2004. (Doc. 650). On June 24, 2004, the Supreme Court issued its decision in *Blakely*. Four days later, defense counsel submitted additional objections, arguing that the weapons enhancement could not be applied under *Blakely*. One month later, on July 27, 2004, defense counsel submitted further objections, also premised on *Blakely*, contesting the drug quantity for which defendant could be held accountable for sentencing purposes. (Doc. 826 at 10–17). The objections asserted that, since these issues had not been submitted to a jury or proved beyond a reasonable doubt, they could not be used in computing defendant's sentence. Counsel asked the court to employ the Guidelines sentence applicable to distribution of a minimal amount of cocaine base, potentially resulting in a three-year reduction in the imprisonment range. (Doc. 826 at 15–16).

Neither the government nor defendant produced evidence at the sentencing hearing, but the probation officer submitted state court records confirming the convictions indicated in the pre-sentence report. (Doc. 804; Doc. 826 at 21–22, 29). Defense counsel repeated the objections noted above, claiming that *Blakely* required *all* facts to be submitted to a jury and proved beyond a reasonable doubt at a proceeding governed by the Federal Rules of Evidence. Counsel for the government disagreed. The prosecution argued, first, that *Blakely* did not apply to federal sentencing proceedings under the Guidelines and, second, that defendant had implicitly admitted to the drug quantity involved in the offense by executing the plea agreement premised on application of the maximum sentence. (Doc. 826 at 12, 15–20).

During the sentencing hearing, the court asked counsel a series of questions regarding their intentions and understandings at the time of the plea agreement:

THE COURT: I note in the record that there are references by [the United States Attorney] to an understanding that the statutory maximum term of imprisonment that would apply in this case would be 48 months.

[DEFENSE COUNSEL]: Correct.

THE COURT: Now, prior to the decision that was issued in *Blakely*, was that your understanding ... ?

[DEFENSE COUNSEL]: Absolutely, and I thought it was a very favorable plea arrangement for the defendant and did put a cap on his exposure, and we were agreeing on that cap.... [T]he advantage to the defendant was the 48–month cap.

THE COURT: All right. And at least that was the basis on which you advised your client and your client entered into the plea agreement prior to the Supreme Court's decision in *Blakely v. Washington.*

[DEFENSE COUNSEL]: Absolutely.

THE COURT: Is that also your understanding ... ?

[UNITED STATES ATTORNEY]: Yes, Your Honor. In negotiating the plea it was the mutual understanding of both sides that because the drug quanti-

ty, particularly the [cocaine base], would cause the [G]uidelines to be so high on a small amount, that capping the plea at 48 months would mean absent anything else that he would get a 48–month sentence, because five grams of crack cocaine is 60 months and the amounts that we were discussing would have been much more than five grams. So it was the mutual expectation of the parties that the [G]uidelines would far exceed the statutory maximum, or at least exceed the maximum, and that therefore 48 months would be what we were bargaining for. . . .

. . . .

THE COURT: All right. Well, I think that cleared up at least what the parties' expectation was and the reasons why the plea agreement was consummated in this particular case[—]based upon the obvious application of the statutory maximum.

(Doc. 826 at 4–7). Defense counsel subsequently stated that he had filed objections to the drug quantity estimate of the presentence report in an "attempt[ ] to bring [his] client under the *Blakely* umbrella."[4] (Doc. 826 at 16–17).

The court sustained the objection to the weapons possession enhancement based on agreement of counsel, but overruled the remaining objections. In an oral ruling, the court held that *Blakely* applied to federal sentencing proceedings, but did not prevent the court in this case from imposing a sentence consistent with the Guidelines. (Doc. 826 at 22–33). Finding that sufficient evidence supported the criminal

history and drug quantity assigned to defendant in the pre-sentence report, the court imposed a sentence of forty-eight months imprisonment and a $500 fine. The court noted that a memorandum in support of the ruling would follow. (Doc. 805; Doc. 826 at 31).

## II. Discussion

■ *Blakely* followed the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "any fact that increases the penalty for a crime beyond the prescribed *statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348 (emphasis added), *quoted in Blakely*, —— U.S. at —— ——, 124 S.Ct. at 2536–37. Prior to *Blakely*, nearly all courts had interpreted the phrase "statutory maximum" to refer to the maximum penalty that the judge could impose under the *general criminal statute* defining the offense itself, rather than the applicable *sentencing provisions* prescribing a more limited range of available sentences. *See Blakely*, —— U.S. at —— n. 1, 124 S.Ct. at 2547 n. 1 (O'Connor, J., dissenting) (citing cases); *see also, e.g., United States v. DeSumma*, 272 F.3d 176, 181 (3d Cir.2001).[5] Judges were free, under this interpretation, to use the United States Sentencing Guidelines as they were intended, consulting the Guidelines to determine the base sentence range for the offense and then increasing or decreasing this range (within the minimum and maximum allowed under the general criminal

---

**4.** During the hearing, the court commended defense counsel for his candor and professionalism in the wake of the difficult circumstances presented by this case, and the court will take this opportunity to note its appreciation of the work of both defense counsel and the United States Attorney in this matter. Their conduct exemplifies the principle, often overlooked, that cooperation with opposing

counsel, candor before the court, and zealous representation of the client are not mutually exclusive concepts.

**5.** *But see United States v. Green*, No. 02–CR–10054, —— F.Supp.2d ——, —— ——2004 WL 1381101, at *16–24 (D.Mass. June 18, 2004); *State v. Gould*, 271 Kan. 394, 23 P.3d 801, 812–14 (2001).

statute) based on factual findings made by a preponderance of the evidence. *See, e.g., id.*

The *Blakely* Court rejected this interpretation, calling into question the validity of these standard sentencing practices. The Supreme Court invalidated a sentence of ninety months incarceration imposed by a Washington trial judge under that state's determinate sentencing scheme. *Blakely,* —— U.S. at ——————, 124 S.Ct. at 2535–37. The defendant had been convicted by a jury of kidnapping. Washington general criminal statutes permitted a maximum penalty of ten years imprisonment for this offense, and statutory sentencing provisions prescribed a base sentence range of forty-nine to fifty-three months. *Id.* The trial judge increased the sentence range to ninety months based on his finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty." *Id.*

■■■ The Supreme Court reversed, concluding that the statutory maximum in the case was not ten years, as the state court had assumed, but fifty-three months, as prescribed by the sentencing provisions. *Id.* The Court held that the "statutory maximum" is not the maximum penalty permitted under *general criminal statutes,* but the maximum penalty permitted under applicable *sentencing provisions,* based solely on the facts reflected in the jury verdict. *Id.* at 2536–37, 2539; *see also Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. The issue of whether the defendant had acted with "deliberate cruelty," the fact upon which the trial judge had relied to increase the defendant's sentence, had not been submitted to the jury or proved beyond a reasonable doubt. *Blakely,* —— U.S. at ——————, 124 S.Ct. at 2535–37. By imposing a term of imprisonment based on this finding, beyond the base range prescribed by sentencing provisions, the trial judge had violated the defendant's rights to a jury trial and proof beyond a reasonable doubt. *Id.*

*Blakely* involved a state, not a federal, prosecution and statutory, not regulatory, sentencing provisions. *See id.* at 2535. The Supreme Court has not yet addressed the effect of the rights to a jury trial and proof beyond a reasonable doubt in federal criminal proceedings, where sentencing is cabined by Guidelines promulgated by the United States Sentencing Commission.[6] Indeed, the Court has expressly refrained from resolving the issue in several decisions, including *Blakely.*[7] *See also United States v. Booker,* 375 F.3d 508, 513 (7th Cir.2004) ("When the Supreme Court says that it is not resolving an issue, it perforce confides the issue to the lower federal

---

**6.** *Cf. United States v. Watts,* 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (per curiam) (upholding Guidelines against Double Jeopardy Clause challenge); *Witte v. United States,* 515 U.S. 389, 406, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (same); *Stinson v. United States,* 508 U.S. 36, 38–39, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that Guidelines and commentary have force of law that may not be disregarded by sentencing judge); *United States v. Dunnigan,* 507 U.S. 87, 96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (upholding Guidelines against Fifth Amendment right to testify challenge); *Mistretta v. United States,* 488 U.S. 361, 412, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding United States Sentencing Commission as constitutional del-

egation of legislative authority). *But see United States v. Booker,* 73 U.S.L.W. 3073, 2004 WL 1713654 (U.S. Aug. 2, 2004) (granting writ of certiorari to decide issue).

**7.** *See Blakely,* —— U.S. at —— n. 9, 124 S.Ct. at 2538 n. 9 ("The Federal Guidelines are not before us, and we express no opinion on them."); *Apprendi,* 530 U.S. at 497 n. 21, 120 S.Ct. 2348 ("The Guidelines are, of course, not before the Court. We therefore express no view on the subject beyond what this Court has already held."); *Edwards v. United States,* 523 U.S. 511, 516, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998) ("[W]e need not, and we do not, consider the merits of petitioners' statutory and constitutional issues.")

courts for the first pass at resolution."); accord *United States v. Ameline,* 376 F.3d 967, 978 (9th Cir.2004); *United States v. Leach,* 325 F.Supp.2d 557, 560–61 (E.D.Pa. 2004); *United States v. Croxford,* 324 F.Supp.2d 1255, 1260–61 (D.Utah 2004).[8]

■ Nevertheless, that *Blakely* applies to the Guidelines is dictated by the rationale of the decision. *See Blakely,* —— U.S. at ——–——, 124 S.Ct. at 2549–50 (O'Connor, J., dissenting); *see also Ameline,* 376 F.3d at 974–78; *Booker,* 375 F.3d at 510–15. The constitutional interpretation provided in *Blakely* reflects the traditional roles of the legislature, jury, and judge. *See id.* at 2538–40; *see also Harris v. United States,* 536 U.S. 545, 556–64, 567–68, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). The legislature defines the offense and prescribes the maximum punishment. The jury finds the facts necessary to subject the defendant to the maximum punishment. The judge determines the sentence that should be imposed within the maximum punishment. *See Blakely,* —— U.S. at ——–——, 124

S.Ct. at 2538–40; *Harris,* 536 U.S. at 556–64, 567–68, 122 S.Ct. 2406.

The Constitution prohibits the sentencing judge from making additional findings of fact if those findings would subject the defendant to greater punishment, even if the legislature purports to grant to the court such authority. *Blakely,* —— U.S. at ——–——, 124 S.Ct. at 2536–40; *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. The legislature cannot establish a maximum sentence for a crime and then permit the judge to increase that sentence based on independent factual findings. This would effectively punish the defendant for criminal acts not submitted to a jury or proved beyond a reasonable doubt. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2539 (stating that this sentencing procedure would relegate the jury trial to "a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish"). The Constitution forbids such a result. *Id.* at 2536–40. The judge's sentencing discretion is based on the limits set by the legislature and the facts found by the jury. *Id.; Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

8. *Contra United States v. Hammoud,* 381 F.3d 316, 348–54 (4th Cir.2004) (distinguishing *Blakely* as applicable only to "legislatively prescribed maximum[s]" rather than those prescribed by the United States Sentencing Commission and holding that prior Supreme Court precedent required application of Guidelines despite absence of supporting jury findings); *United States v. Reese,* 382 F.3d 1308, 1310–11 (11th Cir.2004) (same); *United States v. Koch,* 383 F.3d 436, 438–42 (6th Cir.2004) (same); *United States v. Mincey,* 380 F.3d 102, 105–06 (2d Cir.2004) (same); *United States v. Pineiro,* 377 F.3d 464, 467–73 (5th Cir.2004) (same). It must be noted that this issue has been previously decided by the Court of Appeals for the Third Circuit, which held that *"Apprendi* does not apply to [an] increase in [the maximum] sentence under the Sentencing Guidelines." *United States v. Williams,* 235 F.3d 858, 862–63 (3d Cir. 2000), *cited with approval in DeSumma,* 272

F.3d at 181. For the reasons discussed in this memorandum, and in the dissenting opinion of Justice O'Connor in *Blakely,* this court believes that these Third Circuit decisions have now been implicitly overruled. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2547 n. 1, 2549–50 (O'Connor, J., dissenting) (concluding that majority's reasoning dictates application to federal sentencing proceedings under the Guidelines and citing *DeSumma,* 272 F.3d at 181, as an opinion to the contrary); *see also Ameline,* 376 F.3d at 978; *Booker,* 375 F.3d at 513; *Leach,* 325 F.Supp.2d at 560–61; *Croxford,* 324 F.Supp.2d at 1260–61; *cf. Pappas v. City of Lebanon,* 331 F.Supp.2d 311, 319–20 (M.D.Pa.2004) ("[W]hen ... decisions [of the court of appeals] are obviously undermined by more recent opinions of the Supreme Court, the district court has an obligation to recognize the former as overruled.").

■ The United States Sentencing Guidelines represent an exercise of legislative authority and have the force of law.[9] *Mistretta v. United States*, 488 U.S. 361, 370–71, 380–85, 393–96, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *Stinson v. United States*, 508 U.S. 36, 42–43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). In conjunction with the United States Code, the Guidelines define offenses and prescribe maximum punishments. The jury finds the facts necessary to subject the defendant to the maximum punishment. This maximum punishment is the "statutory maximum" for *Blakely* purposes. The judge determines the sentence that should be imposed within the "statutory maximum." *Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2536–40 (citing *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348).

The judge may not make additional findings that would increase the sentence above the "statutory maximum," even if the Guidelines purport to allow this. To do so would allow the judge to subject the defendant to greater punishment than that permitted under governing law based on the facts found by the jury. *See id.* at 2539. The Constitution forbids such a result. *See id.* at 2536–40; *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

As a determinate sentencing regime promulgated through the exercise of legislative authority, the United States Sentencing Guidelines implicate the constitutional rights recognized in *Blakely*. *See Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2549–50 (O'Connor, J., dissenting); *Ameline*, 376 F.3d at 974–78; *Booker*, 375 F.3d at 510–15; *United States v. O'Daniel*, 328 F.Supp.2d 1168, 1174–76 (N.D.Okla.2004). The "statutory maximum" sentence that may be imposed on a defendant is that permitted under the Guidelines based on facts submitted to a jury and proved beyond a reasonable doubt.[10] *See Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2549–50; *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

Once this maximum is established, the court may employ the Guidelines as they were intended, conducting an independent evaluation of the record, supplemented by additional evidence introduced at a sentencing hearing, and making independent findings of fact. *See* U.S. Sentencing Guidelines Manual § 6A1.3 (2003); *see also* Fed.R.Crim.P. 32; U.S. Sentencing Guidelines Manual § 1B1.4 (citing 18 U.S.C. § 3661). Based on these findings, and considering both available enhancements and reductions, the appropriate Guidelines sentence may be determined. *See id.* § 1B1.1. As long as this sentence does not exceed the "statutory maximum," the judge may impose the sentence without constitutional qualm.[11] *Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2536–40.

---

9. Although this authority was delegated to an agency, the United States Sentencing Commission, the agent can exercise no greater constitutional power than the principal. *Mistretta*, 488 U.S. at 370–71, 380–85, 393–96, 109 S.Ct. 647; *Green*, —— F.Supp.2d at ——, 2004 WL 1381101, at *16–24; *see also Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2549–50 (O'Connor, J., dissenting) ("The fact that the Federal Sentencing Guidelines are promulgated by an administrative agency nominally located in the Judicial Branch is irrelevant to the majority's reasoning.").

10. The right to proof beyond a reasonable doubt is encompassed within both the Fifth and Fourteenth Amendment Due Process Clauses and applies with equal vitality in both state and federal criminal actions. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus, the analysis provided in *Blakely* and *Apprendi*, involving state sentencing proceedings governed by the Fourteenth Amendment, may be imported to this case, involving a federal sentencing proceeding governed by the Fifth Amendment. *See Harris*, 536 U.S. at 565–68, 122 S.Ct. 2406.

11. If the Guidelines sentence would exceed

Clearly, neither *Blakely* nor its predecessors preclude the district judge from imposing a sentence below the "statutory maximum" based on independent findings. *See id.; Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *see also Harris,* 536 U.S. at 567, 122 S.Ct. 2406. The Constitution sets a ceiling. It is concerned only with protecting the defendant from suffering a sentence greater than the "statutory maximum" based on the jury's verdict. *See Blakely,* —— U.S. at ——– ——, 124 S.Ct. at 2536–40; *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. It does not limit the traditional discretion of the sentencing judge to impose a lesser sentence if appropriate.[12] *See Harris,* 536 U.S. at 567, 122 S.Ct. 2406; *McMillan,* 477 U.S. at 89–90, 106 S.Ct. 2411. Only when the final sentence exceeds the "statutory maximum" are the constitutional rights recognized in *Blakely* impinged. *See Blakely,* —— U.S. at ——– ——, 124 S.Ct. at 2536–40; *Harris,* 536 U.S. at 567–68, 122 S.Ct. 2406.

■ Thus viewed, *Blakely* simply calls for a conceptual bifurcation of sentencing procedure. The first level involves the determination of the "statutory maximum" in the case. The judge determines the maximum Guidelines sentence based solely on the facts submitted to a jury and proved beyond a reasonable doubt. *See Blakely,* —— U.S. at ——– ——, 124 S.Ct. at 2536–40. The second level involves the determination of the appropriate Guide-

lines sentence. The judge applies the Guidelines as they were intended, considering all relevant and reliable information, making findings based on a preponderance standard, and applying all appropriate sentencing adjustments. *See* U.S. Sentencing Guidelines Manual § 6A1.3; *see also* Fed.R.Crim.P. 32; U.S. Sentencing Guidelines Manual § 1B1.4 (citing 18 U.S.C. § 3661). The final sentence is limited by the "statutory maximum," but the judge need not take further account of the jury's findings. *See Harris,* 536 U.S. at 567–68, 122 S.Ct. 2406 (stating that the jury's verdict sets "the outer limits of a sentence" and that the judge may impose any sentence "[w]ithin the range authorized by the jury's verdict"). The constitutional rights recognized in *Blakely* do not render the Guidelines unconstitutional, but merely require an additional level of procedural protections. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2540 ("By reversing the judgment below, we are not . . . find[ing] determinate sentencing schemes unconstitutional. This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the [Constitution].") (internal quotations and citations omitted); *cf. O'Daniel,* 328 F.Supp.2d at 1174–83 (discussing viability of Guidelines in light of *Blakely* under a "four-point plan" announced by district).

the "statutory maximum," the judge may presumably grant a downward departure under section 5K2.0, *see* U.S. Sentencing Guidelines Manual § 5K2.0(a)(2)(B) ("A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."), to bring the final sentence within constitutional bounds. *See United States v. Lombard,* 72 F.3d 170, 186–87 (1st Cir.1995) (stating that a downward departure may be warranted when Guidelines sentence would otherwise poten-

tially violate rights to jury trial and proof beyond a reasonable doubt), *cited in Watts,* 519 U.S. at 156 n.2, 117 S.Ct. 633. The court need not and will not explore the propriety of such a departure in this case, where no constitutional concerns are implicated by the Guidelines sentence. *See infra* Part II.B.

12. Of course, a lesser sentence may violate the directives of the legislature, but this would represent a statutory, not a constitutional, violation. *See Harris,* 536 U.S. at 567, 122 S.Ct. 2406; *McMillan,* 477 U.S. at 89–90, 106 S.Ct. 2411.

Proceeding under this framework, the court will determine first the "statutory maximum" sentence that may be imposed. The court will then determine the appropriate Guidelines sentence in this case.

### A. *"Statutory Maximum" Sentence*

The most significant sentencing enhancements in this case, as in many, are attributable to two facts: defendant's numerous prior convictions and the substantial drug quantity involved in the offense at issue. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 2D1.1, 2D1.6, 4A1.1. Neither of these facts was submitted to a jury. Nevertheless, the court holds that, in this case, each may be considered for purposes of computing the "statutory maximum."

#### 1. *Prior Convictions*

Both *Blakely* and *Apprendi* recognized that sentencing enhancements based on prior convictions—so-called "recidivism" provisions—have traditionally and consistently been regarded as outside the scope of the constitutional rights to a jury trial and proof beyond a reasonable doubt. *Blakely,* —— U.S. at ——, 124 S.Ct. at 2536; *Apprendi,* 530 U.S. at 487–89, 120 S.Ct. 2348; *see also Jones v. United States,* 526 U.S. 227, 248–49, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Almendarez–Torres v. United States,* 523 U.S. 224, 243–45, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Matters relating to prior convictions are uniquely susceptible to judicial inquiry through examination of court records and are typically withheld from the jury to avoid the potential for unfair bias. *See id.; see also Old Chief v. United States,* 519 U.S. 172, 185, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). More fundamentally, judicial consideration of prior convictions does not truly deprive the defendant

of his or her rights to a jury trial or proof beyond a reasonable doubt, since the defendant was accorded these protections during the criminal proceedings underlying the prior convictions. *See Almendarez–Torres,* 523 U.S. at 243–45, 118 S.Ct. 1219.

Section 4A1.1 of the United States Sentencing Guidelines, requiring an enhancement in sentence based on prior convictions, falls within this limited exception to the rule of *Blakely* and *Apprendi. See Apprendi,* 530 U.S. at 487–89, 120 S.Ct. 2348. Indeed, the Supreme Court favorably cited this section when describing the traditional authority of the court to impose higher sentences on recidivist offenders without seeking proof of the convictions through admissions or jury findings. *See Almendarez–Torres,* 523 U.S. at 230, 118 S.Ct. 1219. The Constitution does not require that the fact of prior convictions be supported by jury findings for purposes of sentencing, even when those convictions increase the maximum sentence to which the defendant is exposed under the Guidelines. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2536; *Apprendi,* 530 U.S. at 487–89, 120 S.Ct. 2348.

The court finds by a preponderance of the evidence that defendant was convicted of the several offenses delineated in the pre-sentence report. Copies of official records received by the court at sentencing verify the time and nature of these offenses and the fact of his convictions. Although defendant disputes this information, he offered no independent evidence that would cast doubt on the authenticity or accuracy of the official judicial files, documenting his criminal history. These several offenses may be considered as fact for purposes of the "statutory maximum" sentence.[13]

---

**13.** This evidence would suffice to establish the fact of these convictions beyond a reasonable doubt.

### 2. *Drug Quantity*

█ Unlike prior convictions, drug quantity undoubtedly constitutes a fact subject to the constitutional rights announced in *Blakely*. Several courts, including the Third Circuit Court of Appeals, have interpreted *Apprendi* to require that the issue of drug quantity be submitted to a jury and proved beyond a reasonable doubt whenever it will affect the maximum sentence applicable under the *United States Code. See, e.g., United States v. Vazquez*, 271 F.3d 93, 98–99 (3d Cir.2001). It necessarily follows that *Blakely* requires similar procedural protections whenever drug quantity will affect the "statutory maximum" applicable under the *United States Sentencing Guidelines. Cf. Blakely*, —— U.S. at ——, 124 S.Ct. at 2536 ("This case requires us to apply the rule we expressed in *Apprendi* ...."). The Fifth and Sixth Amendments guarantee that no individual will be subjected to a sentence greater than that permitted under the United States Sentencing Guidelines based on the drug quantity reflected in the verdict of a jury and proved beyond a reasonable doubt. *See id.*

█ But these rights may be waived, as the *Blakely* Court specifically noted. *Id.* at 2541–42. A defendant may waive the right to a determination of all facts beyond a reasonable doubt by admitting or stipulating to the relevant facts in open court. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The court may then accept those facts as established when determining the statutory maximum. *Blakely*, —— U.S. at ——, —— ——, 124 S.Ct. at 2536, 2541–42. A defendant may also waive the right to a jury trial. *Duncan v. Louisiana*, 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). When a defendant makes a knowing waiver of his or her Sixth Amendment right, the court may engage in judicial fact-finding with respect to operative facts, making factual findings that increase the maximum sentence to which the defendant is exposed. *Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2541–42; *see also O'Daniel*, 328 F.Supp.2d at 1174–83.

The court finds that the plea agreement and plea colloquy in this case reflect a stipulation as to drug quantity. In the alternative, the court finds that defendant made an express waiver of his right to a jury trial, and will make independent findings with respect to the issue.

### a. *Stipulation with Respect to Drug Quantity*

█ The terms of the plea agreement, and the clear expectations of both parties to that agreement, demonstrate that defendant made a knowing stipulation that the offense at issue involved more than twenty grams of cocaine base. Counsel for both parties represented to the court during the sentencing hearing that they had entered into the plea agreement with the "mutual" understanding that the drug amount involved in the offense would be more than sufficient to invoke the maximum Guidelines sentence of forty-eight months imprisonment. (Doc. 826 at 5). Defense counsel candidly and properly conceded that "the advantage to the defendant [in entering the agreement] was the 48–month cap." (Doc. 826 at 4). In subsequent letters to the probation office, he characterized the twenty-gram estimate in the pre-sentence report as "reasonable." (Doc. 826 at 12–13, 15). The parties clearly understood that the offense involved more than twenty grams of cocaine base, and negotiated the agreement around the assumption. Indeed, it is both obvious and ironic that neither counsel addressed drug quantity directly in the plea agreement or at the plea hearing because neither believed that it was disputed. Only the sub-

sequent issuance of *Blakely* rendered the absence of such terms an issue.

The court is entitled to rely on the representations of counsel, as officers of the court, that the parties understood and agreed that defendant would be subject to the maximum four-year sentence because the offense involved more than twenty grams of cocaine base. By executing the plea agreement, defendant knowingly stipulated to this drug quantity for purposes of sentencing, and the court accepted this stipulation when it accepted his plea. Based on this stipulation, the court finds that the offense to which defendant pled guilty involved more than twenty grams of cocaine base, as set forth in the pre-sentence report. *See Blakely*, —— U.S. at ——, 124 S.Ct. at 2541 (stating that enhancements may be applied absent jury findings beyond a reasonable doubt if defendant "stipulates to the relevant facts").

**·b.   *Waiver of Right to a Jury Trial***

■ In the alternative, the court finds that defendant made an express waiver of his right to a jury trial, allowing the court to engage in independent fact-finding on the issue of drug quantity. During the plea colloquy, at which defendant was represented by counsel, the court specifically advised defendant of the nature of his Sixth Amendment right and asked whether he "desire[d] to give up [his] right to a jury trial." He responded in the affirmative. The court asked defendant whether he had reviewed and did accept the terms of the plea agreement. That agreement explicitly provides that "defendant understands that unresolved substantive objections will be decided *by the court* at the sentencing hearing." (Doc. 414 ¶ 16 (emphasis added)). He again responded in the affirmative, and admitted that the plea agreement was executed knowingly and voluntarily and with the assistance of counsel. Based upon these statements and provisions, the court finds that defendant made a knowing and voluntary waiver of his right to a jury trial.

The subsequent issuance of the *Blakely* decision does not make the waiver unknowing or involuntary. The court properly advised defendant of the nature of the jury trial right during the plea colloquy, without expressing a view on whether that right did or did not apply to facts underlying sentencing enhancements. Defendant responded that he wished to relinquish this right. The plea agreement clearly indicates that sentencing matters will be decided by the court, rather than a jury. Defendant executed the agreement without objection to this provision. That the Supreme Court more fully elucidated the nature of his jury trial right after the plea colloquy does not render these waivers ineffective. Defendant was fully apprised of his Sixth Amendment rights, and effected a knowing and voluntary waiver of those rights. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (citing *Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930)); *cf. Iowa v. Tovar*, —— U.S. ——, ——, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004) (stating that waiver of Sixth Amendment right to counsel at plea hearing is "knowing" when the court informs defendant of the right to counsel even though the court did not explain potential ramifications of waiver); *Bousley v. United States*, 523 U.S. 614, 618–19, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (finding plea unknowing when intervening change of law revealed that the court misinformed defendant of the nature of the offense).

The waiver of defendant's right to a jury trial allows the court to make factual findings that increase the "statutory maximum" sentence in this case. *Blakely*, —— U.S. at —— – ——, 124 S.Ct. at 2541–42. However, defendant retains his right to proof beyond a reasonable doubt, and the

court must adhere to this standard in rendering these findings. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

The court's fact-finding is not governed by the Federal Rules of Evidence.[14] Rule 1101 expressly disclaims application of the Federal Rules of Evidence in sentencing proceedings. *See* FED.R.EVID. 1101(d)(3); *see also United States v. Kikumura,* 918 F.2d 1084, 1099–1100 (3d Cir.1990). Neither the Jury Trial nor the Due Process Clause, on which *Blakely* rested, encompasses a right against presentation of hearsay testimony or other forms of proof. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2537 (citing *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348). Although other constitutional provisions impose certain evidentiary limitations in criminal proceedings, nothing in the Constitution mandates wholesale application of the Federal Rules of Evidence.[15] *See Burgett v. Texas,* 389 U.S. 109, 113–14, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *cf. Crawford v. Washington,* —— U.S. ——, ——, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004) (discussing limits on introduction of hearsay testimony under the Confrontation Clause). Federal statutes, the Rules of Evidence, and the Sentencing Guidelines obligate the sentencing judge to consider all relevant and reliable evidence, *see* 18 U.S.C. § 3661, FED.R.CRIM.P. 32; U.S. SENTENCING GUIDELINES MANUAL § 1B1.4, and the court will adhere to these strictures.

Based on the statements of defendant and defense counsel, and the evidence cited in the pre-sentence report, the court finds beyond a reasonable doubt that the offense at issue involved distribution of cocaine base in a quantity exceeding twenty grams. Defendant admitted during his

---

**14.** *See Gregg v. Georgia,* 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (upholding inapplicability of rules of evidence at sentencing proceedings before a jury); *Williams v. New York,* 337 U.S. 241, 246–47, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (upholding inapplicability of rules of evidence at sentencing proceedings before the court); *United States v. Bradley,* 880 F.Supp. 271, 290–91 (M.D.Pa. 1994) (.[The Constitution] has never been held to require that courts adhere [during sentencing proceedings before a jury or a court] to the same rules of evidence which govern the guilt stage of a trial.) (citing *Gregg,* 428 U.S. at 203–04, 96 S.Ct. 2909; *Williams,* 337 U.S. at 246–47, 69 S.Ct. 1079); *cf.* 18 U.S.C. § 3593(c) (providing that rules governing admission of evidence at criminal trials do not apply in sentencing proceedings in a death penalty case before a jury or the court); 21 U.S.C. § 848(j) (same). *Contra O'Daniel,* 328 F.Supp.2d at 1178–82. That the Rules are inapplicable does not render sentencing proceedings an evidentiary free-for-all. *Bradley,* 880 F.Supp. at 286–87. The court retains the inherent authority to manage proceedings and restrain the presentation of unreliable, irrelevant, or unfairly prejudicial evidence. *Id.* (holding that, although Federal Rules of Evidence do not govern sentencing proceedings before a jury in a death penalty case, court possesses inherent authority to exclude relevant evidence as unreliable or prejudicial); *see also Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (stating that courts possess inherent authority to manage the course of trials through evidentiary rulings); *Lopez v. United States,* 373 U.S. 427, 440, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963) (noting courts' authority to exclude material evidence in the absence of constitutional or statutory rules); *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 609–10 (3d Cir.1995) (stating that courts possess inherent power to issue orders that are in harmony, although not required, by federal rules); *United States v. O'Driscoll,* 250 F.Supp.2d 432, 435–36 (M.D.Pa.2002) (holding that, although Federal Rules of Evidence do not govern sentencing proceedings before a jury in a death penalty case, court should exclude, as unreliable, hearsay evidence of unadjudicated misconduct).

**15.** Neither party argues that the sentencing proceeding in this case violated evidentiary limitations imposed by the Constitution, and the court will not address the nature or application of those limitations.

plea hearing to trafficking in cocaine base from a certain residence, and several grams of the drug were discovered during a search of this residence. He accepted during the plea hearing the representation of the prosecutor that the offense involved a substantial quantity of drugs. He raised no objection—other than the obligatory, *post hoc Blakely* challenge—to statements in the pre-sentence report indicating that he had been involved in the distribution of more than twenty grams of cocaine base. To the contrary, defense counsel characterized these estimates as "reasonable" in his response to the report. (Doc. 826 at 12–13, 15). These assertions were further corroborated by co-defendants during interviews with law enforcement. This evidence is clearly sufficient to support the finding, beyond a reasonable doubt, that the offense to which defendant pled guilty involved more than twenty grams of cocaine base.

### 3. Computation of "Statutory Maximum"

Based on these findings—that defendant was convicted of the various offenses listed in the pre-sentence report and that the offense at issue involved over twenty grams of cocaine base—the "statutory maximum" to which defendant may be sentenced is forty-eight months incarceration and a $125,000 fine. The offense level applicable to "use of a communication facility in drug trafficking" involving more than twenty grams of cocaine base is twenty-eight, *see* U.S. SENTENCING GUIDELINES MANUAL §§ 2D1.1, 2D1.6, and defendant's prior convictions result in a criminal history category of four, *see id.* § 4A1.1. The maximum term of incarceration under the sentencing table of the Guidelines is 137 months, *see id.* ch. 5, pt. A, but this is reduced to forty-eight months based on the maximum term of incarceration established under 21 U.S.C. § 843(d)(1), *see* U.S. SENTENCING GUIDELINES MANUAL

§ 5G1.1. The maximum fine for this offense level is $125,000. *See id.* § 5E1.2. These penalties constitute the "statutory maximum" to which defendant may be sentenced under *Blakely*.

### B. Guidelines Sentence

Application of the Guidelines is a standard exercise for federal judges, and they are applied no differently during the second level of sentencing procedure post-*Blakely*. The Guidelines require consideration of all available information to determine, by a preponderance of the evidence, the enhancements and reductions that should be applied. *See* U.S. SENTENCING GUIDELINES MANUAL § 6A1.3; *see also* FED. R.CRIM.P. 32; U.S. SENTENCING GUIDELINES MANUAL § 1B1.4 (citing 18 U.S.C. § 3661). Once the appropriate offense level and criminal history category have been established, the Guidelines prescribe a certain sentence range. *See id.* § 1A1.1.

The appropriate sentence in this case is forty-eight months incarceration and a $500 fine. The pre-sentence report indicates that the drug trafficking at issue involved more than twenty grams of cocaine base, an assertion that defendant does not dispute and that may be accepted as fact. *See* FED.R.CRIM.P. 32(i)(3) ("At sentencing, the court ... may accept any undisputed portion of the presentence report as a finding of fact."). As discussed previously, the Guidelines prescribe an offense level of twenty-eight based on this drug quantity. *See* U.S. SENTENCING GUIDELINES MANUAL §§ 2D1.1, 2D1.6. When applied to a criminal history category of four, this offense level results in a range of imprisonment of 110 to 137 months. *See id.* ch. 5, pt. A. This range is reduced to forty-eight months to comport with maximum term of incarceration permitted under 21 U.S.C. § 843(d)(1).

*See* U.S. SENTENCING GUIDELINES MANUAL § 5G1.1.

The range of fines for this offense level is $12,500 to $125,000. *See id.* § 5E1.2. However, the Guidelines permit a reduction in this range based on a defendant's inability to pay. *See id.* The pre-sentence report reflects defendant's limited financial resources and significant outstanding debts. With no income and no reasonable expectations for employment in the near term, defendant is unable to pay a fine within the presumptive range prescribed by the Guidelines. A fine of $500 is within defendant's means and satisfies the Guidelines requirement of punitive effect.[16] *See id.*

This case exemplifies the tandem operation of *Blakely* and the Guidelines. Based on the facts reflected in the admissions of defendant (alternatively found by the court following defendant's waiver of his jury trial right), the "statutory maximum" is forty-eight months incarceration and a fine of $125,000. Based on the pre-sentence report and information presented at the sentencing hearing, the appropriate Guidelines sentence is forty-eight months incarceration and a fine of $500.00. This sentence comports with both *Blakely* and the Guidelines. It was properly imposed by the court, and defendant's objections were properly overruled.

### III. *Conclusion*

*Blakely* is an evolution, not a revolution. It is supplementary, not contradictory. Far from sounding the death knell of the United States Sentencing Guidelines, *Blakely* supports full operation of those provisions. It affirms that defendants do not shed their constitutional rights to a jury trial and proof beyond a reasonable doubt at the start of sentencing proceedings. Honoring these rights requires only a conceptual bifurcation of sentencing procedure: A determination of the "statutory maximum" must precede and cabin a determination of the Guidelines sentence.[17] *Blakely* is both applicable to and consistent with the United States Sentencing Guidelines.

### APPENDIX

### STANDING PRACTICE ORDER

AND NOW, this day of, 2004, in light of the decision of the Supreme Court in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), holding that all facts relevant to the "statutory maximum" sentence must be submitted to a jury and proved beyond a reasonable doubt, *see id.* at 2536–37, and the decision of this court in *United States v. Johns,* No. 1:03–CR–250–16, 2004 WL 2053275 (M.D.Pa. Sept. 15, 2004), holding that the constitutional rights recognized in *Blakely* are applicable to and consistent with the United States Sentencing Guidelines, *see id.* at 2, and to clarify and facilitate practice and procedure before this court, it is hereby ORDERED that the following rules shall govern arraignment and subsequent proceedings in criminal cases:

1. Plea Proceedings

   a. A plea of guilty will be accepted by the court only after defendant is informed and agrees in open court that the plea will result in a waiver of the right to a jury trial at all subsequent proceedings in the case, including sentencing pro-

---

**16.** In addition to the fine, a special assessment of $100 is required under 18 U.S.C. § 3013.

**17.** As an example of the practical implementation of this conceptual bifurcation, a standing practice order governing future criminal proceedings before the undersigned is attached as an appendix to this opinion.

ceedings. *See* Fed.R.Crim.P. 11(b)(1)(C, F).

b. A plea agreement in which defendant reserves the right to a jury trial at any subsequent proceeding in the case, including sentencing proceedings, will not be accepted by the court. *See* Fed. R.Crim.P. 11(c)(5).

c. A plea of not guilty will be entered by the court if defendant pleads not guilty or if a plea of guilty or plea agreement is not accepted under the circumstances described in this order. *See* Fed.R.Crim.P. 11(a)(4).

2. Trial and Sentencing Proceedings Following a Plea of Not Guilty

a. As soon as practicable following entry of a plea of not guilty, the court will schedule jury selection for a trial proceeding in the case. *See* 18 U.S.C. § 3161(a); Fed. R.Crim.P. 8(a), 13.

b. Unless otherwise ordered by the court, not later than thirty (30) days before the date scheduled for commencement of jury selection, either party shall be permitted to file a motion to sever trial and sentencing proceedings. *See* Fed.R.Crim.P. 12(b)(3)(D).

 i. A brief in support of the motion to sever shall be filed with the motion, *see* L.R. 1.3, 7.5, and subsequent briefs shall be filed in accordance with the Local Rules. *See* L.R. 7.6–7.8.

 ii. If neither party files a timely motion to sever, facts relevant both to guilt or innocence and to sentencing enhancements under the United States Sentencing Guidelines shall be tried and submitted to a jury in a trial

proceeding, to commence on the date scheduled for jury selection. *See* Fed.R.Crim.P. 8(a), 13.

 iii. If either party files a timely motion to sever, the court will determine whether a trial proceeding at which facts relevant both to guilt or innocence and to sentencing enhancements under the United States Sentencing Guidelines are tried and submitted to a jury would appear to prejudice either party and whether such prejudice could be cured by relief other than severance. *See* Fed. R.Crim.P. 14.

A. If the court denies the motion, facts relevant both to guilt or innocence and to sentencing enhancements under the United States Sentencing Guidelines shall be tried and submitted to a jury in a trial proceeding, to commence on the date scheduled for jury selection. *See* Fed.R.Crim.P. 13, 14.

B. If the court grants the motion, facts relevant to guilt or innocence shall be tried and submitted to a jury in a trial proceeding, to commence on the date scheduled for jury selection, and facts relevant to sentencing enhancements under the United States Sentencing Guidelines shall be tried and submitted to the same jury in a sentencing proceeding, to commence immediately upon the return of a verdict of guilty in the prior trial proceeding. *See* Fed.R.Crim.P. 14.

c. The Federal Rules of Evidence shall apply in a trial proceeding but shall not apply in a sentencing proceeding. *See* FED.R.EVID. 1101.

d. Proof beyond a reasonable doubt shall be required at trial and sentencing proceedings with respect to all facts relevant both to guilt or innocence and to sentencing enhancements under the United States Sentencing Guidelines.

e. The parties shall file pre-trial memoranda addressing sentencing enhancements potentially applicable under the United States Sentencing Guidelines, including a proposed verdict form and jury instructions with respect to those enhancements.

   i. The United States shall file its pre-trial memorandum not later than fifteen (15) days before the date scheduled for jury selection.

   ii. Defendant shall file his or her pre-trial memorandum not later than ten (10) days before the date scheduled for jury selection.

   iii. The United States shall be permitted to file a response to defendant's pre-trial memorandum not later than three (3) days before the date scheduled for jury selection.

3. Sentencing Proceeding Following a Plea of Guilty

   a. As soon as practicable following the entry of a plea of guilty, and after receipt of a pre-sentence report, the court will schedule a sentencing proceeding in the case. *See* FED. R.CRIM. P 32.

b. Facts relevant to sentencing enhancements under the United States Sentencing Guidelines shall be tried and submitted to the court in the sentencing proceeding.

c. The Federal Rules of Evidence shall not apply in the sentencing proceeding. *See* FED.R.EVID. 1101.

d. Proof beyond a reasonable doubt shall be required at the sentencing proceeding with respect to all facts relevant to sentencing enhancements under the United States Sentencing Guidelines.

4. Sentencing Hearing

   a. As soon as practicable following conclusion of the trial and/or sentencing proceedings in the case, whether before a jury or the court, and after receipt of a pre-sentence report, the court will schedule a sentencing hearing to be conducted in accordance with the Federal Rules of Criminal Procedure and the United States Sentencing Guidelines. *See* FED. R.CRIM.P. 32; U.S. SENTENCING GUIDELINES MANUAL § 1B1.4 (2003).

   b. A final sentence determination under the United States Sentencing Guidelines shall be rendered by the court based on evidence presented at the sentencing hearing and in the previous proceedings in the case. *See* FED.R.CRIM.P. 32(i); U.S. SENTENCING GUIDELINES MANUAL § 1B1.4 (2003).

   c. Proof by a preponderance of the evidence shall be required at the sentencing hearing with respect to all disputed facts relevant to sentencing enhancements and reductions under the United States

Sentencing Guidelines. *See* U.S. SENTENCING GUIDELINES MANUAL § 6A1.3 (2003).

Nothing in this order shall be construed to limit or modify applicable provisions of the United States Code, the Federal Rules of Criminal Procedure, or the United States Sentencing Guidelines, and the parties are admonished to adhere strictly to the requirements imposed therein.